FILED

2017 APR 27  PM 4: 25

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY_____

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

October 2016 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>            Plaintiff,<br><br>            v.<br><br>SI CHEN,<br>   aka "Cathy Chen,"<br>   aka "Celia Chen,"<br>   aka "Cecilia Chen,"<br>   aka "Chunping Ji,"<br><br>            Defendant. | CR No. 17 CR 0 0254 __<br><br>I N D I C T M E N T<br><br>[50 U.S.C. § 1705(a), (c); 15 C.F.R. §§ 742.4, 742.6, 764.2, part 774: Conspiracy, Attempt, and Violation of the International Emergency Economic Powers Act; 18 U.S.C. § 554: Smuggling Goods From the United States; 18 U.S.C. § 1956(a)(2)(A): International Promotional Money Laundering; 18 U.S.C. § 1543: Forgery or False Use of Passport; 13 U.S.C. § 305(a)(1); 15 C.F.R. §§ 30.2(e), 30.71(a), 758.1: Unlawful Export Information Activities; 18 U.S.C. § 1546(a): Fraud and Misuse of Visas, Permits, and Other Documents; 18 U.S.C. § 2: Aiding and Abetting and Causing an Act to be Done] |

The Grand Jury charges:

INTRODUCTORY ALLEGATIONS

The following was true at all times relevant to this Indictment:

//

//

The International Emergency Economic Powers Act, Export
Administration Regulations, and Foreign Trade Regulations

1.    Under the International Emergency Economic Powers Act
("IEEPA"), Title 50, United States Code, Sections 1701-1707, the
President of the United States was granted authority to deal with
unusual and extraordinary threats to the national security, foreign
policy, or economy of the United States.   50 U.S.C. § 1701(a).
Pursuant to IEEPA, the President could declare a national emergency
through Executive Orders that have the full force and effect of law.

2.    On August 17, 2001, under the authority of IEEPA, the
President issued Executive Order 13222, which declared a national
emergency with respect to the unrestricted access of foreign parties
to United States goods and technologies, and extended the Export
Administration Regulations ("EAR"), set forth at Title 15, Code of
Federal Regulations, Parts 730-774.   Through the EAR, the Department
of Commerce ("DOC") imposed license or other requirements before an
item subject to the EAR could be lawfully exported from the United
States or lawfully re-exported from another country.   These items
were included on the Commerce Control List ("CCL"), published at
Title 15, Code of Federal Regulations, part 774, Supplement No. 1.
Items on the CCL were categorized by Export Control Classification
Number ("ECCN"), which denoted the applicable export controls.   The
President issued annual Executive Notices extending the national
emergency declared in Executive Order 13222 for the time period
covered by that Executive Order through the time covered by this
Indictment.   See, e.g., 81 Fed. Reg. 52,587 (Aug. 8, 2016).

3.    Pursuant to its authority derived from IEEPA, the DOC
reviewed and controlled the export of certain goods and technology

1  from the United States to foreign countries.  In particular, the DOC

2  placed restrictions on the export of goods and technology that it

3  determined could make a significant contribution to the military

4  potential of other nations or that could be detrimental to the

5  foreign policy or national security of the United States.  Under

6  IEEPA and the EAR, it was a crime to willfully export, or attempt or

7  conspire to export, from the United States any item listed on the CCL

8  requiring an export license without first obtaining an export license

9  from the DOC.  See 50 U.S.C. § 1705(c); 15 C.F.R. § 764.2.

10     4.     The DOC, through the U.S. Census Bureau ("Census") required

11  the filing of electronic export information ("EEI") through the

12  Automated Export System ("AES") pursuant to Title 13, United States

13  Code, Section 305; the EAR; and the Foreign Trade Regulations

14  ("FTR"), Title 15, Code of Federal Regulations, Part 30.    The

15  purpose of these requirements was to strengthen the United States

16  government's ability to prevent the export of certain items to

17  unauthorized destinations and end users because the AES aids in

18  targeting, identifying, and when necessary confiscating suspicious or

19  illegal shipments prior to exportation.  15 C.F.R. § 30.1(b).  With

20  exceptions not relevant to the exports at issue in this Indictment,

21  EEI was required to be filed for, among other things, the export of

22  commodities valued over $2,500 per the Harmonized Tariff Schedule of

23  the United States of America ("HTSUSA") commodity classification

24  code.  EEI was required to contain, among other things:  the names

25  and addresses of the parties to the transaction; and the description,

26  quantity, and value of the items exported.  15 C.F. R. § 30.6(a).

27  //

28  //

Defendant and Related Entities

5.    Defendant SI CHEN, aka "Cathy Chen," aka "Celia Chen," aka "Cecilia Chen," aka "Chunping Ji," ("defendant CHEN") was a citizen of the People's Republic of China ("PRC"), who resided in the Central District of California.

6.    Archangel Systems Space, Inc. ("ASSI") was a Delaware corporation, with an address, among others, in El Monte, California. ASSI also maintained an address in Shenzhen, Guangdong, China, and utilized two additional addresses in Pomona, California (the "office address" and "CHEN's residence") to receive shipments.

7.    Century Electronic International Co., Ltd. ("CEI") was a company whose headquarters was located in Shenzhen, Guangdong, China. CEI also used addresses in Hong Kong, including the "Queen's Road address" and the "Jervois Street address," to receive shipments.

8.    Star Aero Investment Limited ("Star Aero") was a company whose address was in Shenzhen, China.  Star Aero also used the Jervois Street address in Hong Kong (the same address used by CEI) to receive shipments.

9.    TAA Electronics, Inc. ("TAA") was an entity that used the Queen's Road address in Hong Kong (the same address used by CEI) to receive shipments.

Items Subject to IEEPA, the EAR, and the FTR

10.    The items described as the "Microwave Components" were 66 microwave components sold to ASSI by a New York company.  The Microwave Components had applications, among others, in space communications.

11. The item described as the "TWT Amplifier" was a Traveling Wave Tube Amplifier sold to ASSI by a Texas company. The TWT Amplifier had applications, among others, in space communications.

12. The items described as "LNAs" were 100 24-34 GHz Ka-Band Low Noise Amplifiers, manufactured and sold by a company in France. The LNAs had applications, among others, in radar and space communications. At all times relevant to this Indictment, the LNAs could not be exported from the United States to Hong Kong or the PRC for national security and regional stability reasons without an export license issued by the DOC.

13. The items described as "DACs" were 173 14-bit, 2.5 GSPS high performance RF digital-to-analog converters sold by a Minnesota company. The DACs had applications, among others, in military jammers and radar. At all times relevant to this Indictment, the DACs could not be exported from the United States to Hong Kong or the PRC for national security reasons without an export license issued by the DOC.

14. The Grand Jury incorporates by reference and re-alleges these Introductory Allegations into each and every count of this Indictment as though fully alleged therein.

COUNT ONE

[50 U.S.C. § 1705(a), (c);

15 C.F.R. §§ 742.4, 742.6, 758.1, 764.2; part 774]

A.  OBJECT OF THE CONSPIRACY

Beginning on a date unknown, but no later than on or about March 25, 2013, and continuing to on or about December 5, 2015, in Los Angeles County, within the Central District of California, and elsewhere, defendant SI CHEN, aka "Cathy Chen," aka "Celia Chen," aka "Cecilia Chen," aka "Chunping Ji" ("defendant CHEN"), and others known and unknown to the Grand Jury, knowingly and willfully conspired and agreed with each other to export items from the United States to Hong Kong without having first obtained the required licenses from the United States Department of Commerce and without filing Electronic Export Information ("EEI") through the Automated Export System ("AES").

B.  MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE
    ACCOMPLISHED

1.  The object of the conspiracy was to be accomplished in the manner and by the means described below, among others:

2.  Unindicted coconspirators, including individuals identified herein as PERSON 1, PERSON 2 and PERSON 3 (which may be aliases used by one or more individuals), caused ASSI to purchase items for export to Hong Kong.

3.  Defendant CHEN received shipments of the items purchased by ASSI at addresses in the Central District of California.

4.  Defendant CHEN caused and attempted to cause the items purchased by ASSI to be shipped from the Central District of California to addresses in Hong Kong used by CEI, Star Aero, and TAA.

1    5.    Unindicted coconspirators caused money to be transferred to
2  defendant CHEN through financial accounts, including accounts in the
3  United States and the PRC in the name of a family member of defendant
4  CHEN.

5    6.    To obtain items and export them from the United States to
6  Hong Kong, defendant CHEN and her coconspirators made false
7  statements to suppliers and shipping companies about the value,
8  description, and ultimate end user and country destination of the
9  items purchased by ASSI.

10    7.    At no time did defendant CHEN or the unindicted
11  coconspirators or anyone associated with ASSI, either individually or
12  through ASSI, apply for or obtain an export license from the United
13  States Department of Commerce authorizing the export of the items
14  purchased by ASSI to Hong Kong or the PRC.

15    8.    At no time did defendant CHEN or the unindicted
16  coconspirators or anyone associated with ASSI, either individually or
17  through ASSI, file EEI through AES for the items purchased by ASSI.

18    9.    As referenced in this Indictment, defendant CHEN and the
19  unindicted coconspirators often used electronic mail ("e-mail") to
20  communicate, in the English and Chinese languages, with each other
21  and with other persons.  All direct quotations from e-mails
22  referenced herein are as they appeared in the e-mails in the English
23  language, including any misspellings.

24  C.    OVERT ACTS

25    In furtherance of the conspiracy and to accomplish the object of
26  the conspiracy, defendant CHEN and others known and unknown to the
27  Grand Jury, committed the following overt acts, among others, within
28  the Central District of California, and elsewhere.

Overt Act #1:   On or about March 25, 2013, coconspirator PERSON 1, using a Star Aero e-mail address, sent an e-mail to defendant CHEN instructing, with reference to a communication defendant CHEN was to have with an ASSI supplier, "Tell them this product is being used by ARCHANGEL SYSTEMS SPACE INC. of the United States itself."

Overt Act #2:   On or about March 28, 2013, defendant CHEN sent an e-mail to coconspirator PERSON 1, at a Star Aero e-mail address, asking coconspirator PERSON 1 to set up an e-mail address for defendant CHEN, using the name "Cathy."

Overt Act #3:   On or about March 28, 2013, defendant CHEN sent an e-mail to coconspirator PERSON 1, at a Star Aero e-mail address, advising that defendant CHEN had obtained a new cell phone number, number XXX-XXX-4064, operated with a disposable phone card and an international phone card, the cost of which was $165 USD.

Overt Act #4:   On or about March 30, 2013, defendant CHEN opened a United States bank account, number XXXXXXXX5081, in the name of a family member of defendant CHEN.

Overt Act #5:   On or about March 31, 2013, defendant CHEN sent an e-mail to coconspirator PERSON 1, at a Star Aero e-mail address, in which defendant CHEN provided complete bank account information for account number XXXXXXXX5081, and asked if PERSON 1 could remit funds for defendant CHEN from the China Construction Bank to that account.

Overt Act #6:   On or about April 1, 2013, defendant CHEN began sending e-mail communications from an ASSI e-mail address that incorporated the alias "Cathy," and began identifying herself in these e-mail communications as "Cathy Chen, Purchasing Manager,

8

1  Archangel Systems Space, Inc." at an address in El Monte, CA, and the
2  phone number XXX-XXX-4064.

3      Overt Act #7:   On or about April 2, 2013, bank account number
4  number XXXXXXXX5081, held in the name of CHEN's family member, and
5  previously identified by defendant CHEN as the account into which
6  coconspirator PERSON 1 could remit funds, received a transfer of $165
7  from Star Aero.

8      Overt Act #8:   On or about August 18, 2013, defendant CHEN
9  informed coconspirator PERSON 2, via ASSI e-mail accounts, "My card
10  number in china is XXXX XXXX XXXX 0165, China CITIC Bank – Shenhe
11  District Nanta Branch, Shenyang City, Liaoning Province, [name of
12  defendant CHEN's family member]."

13      Overt Act #9:   On or about August 21-23, 2013, defendant CHEN,
14  using an ASSI e-mail address, responded, "Okay, understood!" when
15  coconspirator PERSON 2, using an ASSI e-mail address, instructed
16  defendant CHEN that all quotation requests for items that ASSI wished
17  to purchase "in the U.S. can only be requested from within the U.S."
18  and "mustn't have any involvement with China" and that defendant CHEN
19  was not to "contact any companies in China or Hong Kong."

20      Overt Act #10:   On or about January 2, 2014, coconspirator
21  PERSON 1, using a Star Aero e-mail address, e-mailed defendant CHEN
22  (who was using the alias "Celia Chen"), apologized for the late
23  payment and showed that 1,500 Yuan had been deposited into the
24  account number XXXX XXXX XXXX 0165 at China CITIC Bank in the name of
25  defendant CHEN'S family member.

26      Overt Act #11:   On or about August 26, 2014, defendant CHEN e-
27  mailed to coconspirator PERSON 1, at a Star Aero e-mail address, a
28

copy of the photograph that was on defendant CHEN's United States visa document.

Overt Act #12:  On or about September 9, 2014, defendant CHEN used a counterfeited PRC passport or instrument purporting to be a PRC passport, in the alias Chunping Ji, bearing the photograph defendant CHEN sent to coconspirator PERSON 1 on August 26, 2014, to rent an office in Pomona, California, in ASSI's name.

Overt Act #13: On or about September 9, 2014, defendant CHEN used altered ASSI incorporation documents to rent an office in Pomona, California, in ASSI's name.

Overt Act #14:  On or about September 10, 2014, defendant CHEN, using the alias "Cecilia," e-mailed coconspirator PERSON 1 and informed PERSON 1 of the address of the "new office" in Pomona, California.

Overt Act #15:  On or about September 10, 2014, defendant CHEN, using the alias "Cecilia," e-mailed coconspirator PERSON 1 and told PERSON 1 that defendant CHEN needed another phone number to use as "Chunping Ji" and suggested that this phone be a prepaid SIM card that could be obtained "without ID."

Overt Act #16:  On or about September 10, 2014, coconspirator PERSON 1 e-mailed defendant CHEN (who was using the alias "Cecilia") and told defendant CHEN that coconspirator PERSON 1 agreed to buy the new phone and prepaid SIM card.

Overt Act #17:  On or about September 15, 2014, defendant CHEN, using the alias "Cecilia," e-mailed coconspirator PERSON 1, gave PERSON 1 the number for the new prepaid phone, and advised coconspirator PERSON 1 that the new phone number was the number for

ASSI or any department as needed, and that there was no contract signed with this number, "so it is pretty safe."

Microwave Components

Overt Act #18:  On or about September 27, 2014, defendant CHEN, using the alias "Celia," e-mailed to coconspirator PERSON 1, at a Star Aero e-mail address, information about a bank account held by defendant CHEN at Wells Fargo Bank in the United States.

Overt Act #19:  On or about September 30, 2014, defendant CHEN's Wells Fargo Bank checking account, account number XXXXXX1801, received a wire transfer in the amount of $26,000 from Star Aero in Shenzhen, China.

Overt Act #20:  On or about October 1, 2014, defendant CHEN wired $25,778 from her Wells Fargo Bank checking account, account number XXXXXX1801, to a New York company, in payment for the Microwave Components purchased by ASSI.

Overt Act #21:  On or about October 6, 2014, as directed by coconspirator PERSON 3, the New York company shipped the Microwave Components, purchased by ASSI for a total price of $25,778, to defendant CHEN's residence in Pomona, California.

Overt Act #22:  On or about October 10, 2014, defendant CHEN received the Microwave Components at defendant CHEN's residence in Pomona, California.

Overt Act #23:  On or about October 21, 2014, defendant CHEN caused some of the Microwave Components to be shipped to CEI, at its Queen's Road address in Hong Kong.  On documents defendant CHEN provided to the shipping company, defendant CHEN falsely valued the contents of the shipment as worth $100.

Overt Act #24:  On or about November 6, 2014, defendant CHEN caused the remainder of the Microwave Components to be shipped to CEI at its Queen's Road address in Hong Kong.  On documents defendant CHEN provided to the shipping company, defendant CHEN falsely valued the contents of the shipment as worth $175.

Traveling Wave Tube (TWT) Amplifier

Overt Act #25:  On or about November 25, 2014, coconspirator PERSON 3, using an ASSI e-mail address, advised a Texas company to ship the TWT Amplifier purchased by ASSI for $116,000 (not including shipping costs), to the office address in Pomona, California.

Overt Act #26:  On or about November 26, 2014, coconspirator PERSON 1, using a Star Aero e-mail address, sent an e-mail to defendant CHEN providing tracking information for the shipment of the TWT Amplifier to the office address in Pomona, California, that included a previous e-mail to PERSON 3 showing the total cost of the TWT Amplifier (including shipping) to be $116,327.50.

Overt Act #27:  On or about December 4, 2014, defendant CHEN received the shipment of the TWT Amplifier at the office address in Pomona, California.

Overt Act #28:  On or about December 11, 2014, defendant CHEN caused the TWT Amplifier to be shipped to TAA at the Queen's Road address in Hong Kong.  On documents defendant CHEN provided to the shipping company, defendant CHEN falsely valued the contents of the shipment as worth $500.

Overt Act #29:  On or about December 24, 2014, an unindicted coconspirator caused $116,327.50 to be wire-transferred from ASSI, at an address in Shenzhen, Guangdong, China, via ASSI's bank account in Hong Kong, to the Texas company, in payment for the TWT Amplifier.

Low Noise Amplifiers (LNAs)

Overt Act #30:  On or about July 6, 2015, a company in France e-mailed coconspirator PERSON 3 and requested that PERSON 3 complete an End User Statement because the LNAs were "under export control license."

Overt Act #31:  On or about July 8, 2015, coconspirator PERSON 3 e-mailed to a company in France a completed End User Statement that falsely represented that the LNAs that ASSI was purchasing for shipment to the United States would be used by an identified United States company in a communication station and would not be re-exported.

Overt Act #32:  On or about August 24, 2015, coconspirator PERSON 3 requested, via an ASSI e-mail account, that a United States-based shipping company deliver the shipment of the LNAs, purchased by ASSI for $8,051, which had been shipped from France to the United States, to defendant CHEN's residence in Pomona, California.

Overt Act #33:  On or about August 25, 2015, defendant CHEN received at her residence in Pomona, California, the LNAs delivered by the United States-based shipping company.

Overt Act #34:  On or about August 27, 2015, defendant CHEN caused the LNAs to be shipped to Star Aero at the Jervois Street address in Hong Kong.  On documents defendant CHEN provided to the shipping company, defendant CHEN falsely valued the contents of the shipment as worth $200.

Digital-to-Analog Converters (DACs)

Overt Act #35:  On or about November 24, 2015, defendant CHEN received at the office address in Pomona, California, a package

containing 173 DACs, purchased by ASSI for $10,354.45, that had been shipped by a Minnesota company.

Overt Act #36:  On or about November 24, 2015, defendant CHEN carried the package containing the 173 DACs from the office address in Pomona, California, to her vehicle.  On the outside of the package were six stickers warning that the contents of the package were controlled for export from the United States and required a license from the United States Government to be exported.

Overt Act #37:  On or about November 24, 2015, defendant CHEN, with the package containing the 173 DACs in her vehicle, drove to the location of a United States-based shipping company in Chino Hills, California.

Overt Act #38:  On or about November 24, 2015, defendant CHEN presented the package containing the 173 DACs, from which the export control stickers had been removed, to the United States-based shipping company for export to Star Aero at the Jervois Street address in Hong Kong.  On documents defendant CHEN provided to the shipping company, defendant CHEN falsely valued the shipment as worth $250.

COUNT TWO

[50 U.S.C. § 1705(a), (c); 18 U.S.C. § 2(b);

15 C.F.R. §§ 742.4, 742.6, 764.2; part 774]

On or about August 27, 2015, in Los Angeles County, within the Central District of California, and elsewhere, defendant SI CHEN, aka "Cathy Chen," aka "Celia Chen," aka "Cecilia Chen," aka "Chunping Ji," knowingly and willfully exported and caused to be exported from the United States to Hong Kong items under the jurisdiction of the United States Department of Commerce, namely, 100 Low Noise Amplifiers, without first having obtained the required license from the United States Department of Commerce.

COUNT THREE

[50 U.S.C. § 1705(a), (c); 18 U.S.C. § 2(b);

15 C.F.R. §§ 742.4, 764.2; part 774]

On or about November 24, 2015, in Los Angeles County, within the Central District of California, and elsewhere, defendant SI CHEN, aka "Cathy Chen," aka "Celia Chen," aka "Cecilia Chen," aka "Chunping Ji," knowingly and willfully attempted to export from the United States to Hong Kong items under the jurisdiction of the United States Department of Commerce, namely, 173 Digital-to-Analog Converters, without first having obtained the required license from the United States Department of Commerce.

COUNT FOUR

[18 U.S.C. §§ 554; 2(a), 2(b)]

On or about October 21, 2014, in Los Angeles County, within the Central District of California, and elsewhere, defendant SI CHEN, aka "Cathy Chen," aka "Celia Chen," aka "Cecilia Chen," aka "Chunping Ji" ("defendant CHEN"):

(1)  fraudulently and knowingly exported and sent, and caused to be exported and sent, from the United States to Hong Kong, merchandise, articles, and objects, contrary to the laws and regulations of the United States, and

(2)  knowingly received, concealed, bought, sold, and knowingly facilitated the transportation, concealment, and sale of merchandise, articles, and objects, knowing that they would be intended for exportation contrary to the laws and regulations of the United States.

Specifically, defendant CHEN did, aided and abetted, and willfully caused, the purchase, transport, receipt, export and sending from the United States, of a shipment of Microwave Components, the value of which exceeded $2,500, knowingly and willfully intending to fail, and failing, to file Electronic Export Information through the Automated Export System, contrary to Title 13, United States Code, Section 305(a)(1) and Title 15, Code of Federal Regulations, Sections 30.2(e), 30.71(a), and 758.1.

COUNT FIVE

[18 U.S.C. §§ 554; 2(a); 2(b)]

On or about November 6, 2014, in Los Angeles County, within the Central District of California, and elsewhere, defendant SI CHEN, aka "Cathy Chen," aka "Celia Chen," aka "Cecilia Chen," aka "Chunping Ji" ("defendant CHEN"):

(1)   fraudulently and knowingly exported and sent, and caused to be exported and sent, from the United States to Hong Kong, merchandise, articles, and objects, contrary to the laws and regulations of the United States, and

(2)   knowingly received, concealed, bought, sold, and knowingly facilitated the transportation, concealment, and sale of merchandise, articles, and objects, knowing that they would be intended for exportation contrary to the laws and regulations of the United States.

Specifically, defendant CHEN did, aided and abetted, and willfully caused, the purchase, transport, receipt, export and sending from the United States, of a shipment of Microwave Components, the value of which exceeded $2,500, knowingly and willfully intending to fail, and failing, to file Electronic Export Information through the Automated Export System, contrary to Title 13, United States Code, Section 305(a)(1) and Title 15, Code of Federal Regulations, Sections 30.2(e), 30.71(a), and 758.1.

COUNT SIX

[18 U.S.C. §§ 554; 2(a), 2(b)]

On or about December 11, 2014, in Los Angeles County, within the Central District of California, and elsewhere, defendant SI CHEN, aka "Cathy Chen," aka "Celia Chen," aka "Cecilia Chen," aka "Chunping Ji" ("defendant CHEN"):

(1)   fraudulently and knowingly exported and sent, and caused to be exported and sent, from the United States to Hong Kong, merchandise, articles, and objects, contrary to the laws and regulations of the United States, and

(2)   knowingly received, concealed, bought, sold, and knowingly facilitated the transportation, concealment, and sale of merchandise, articles, and objects, knowing that they would be intended for exportation contrary to the laws and regulations of the United States.

Specifically, defendant CHEN did, aided and abetted, and willfully caused, the purchase, transport, receipt, export and sending from the United States, of a Traveling Wave Tube Amplifier, the value of which exceeded $2,500, knowingly and willfully intending to fail, and failing, to file Electronic Export Information through the Automated Export System, contrary to Title 13, United States Code, Section 305(a)(1) and Title 15, Code of Federal Regulations, Sections 30.2(e), 30.71(a), and 758.1.

COUNT SEVEN

[18 U.S.C. §§ 1956(a)(2)(A); 2(a)]

On or about September 30, 2014, in Los Angeles County, within the Central District of California, and elsewhere, defendant SI CHEN, aka "Cathy Chen," aka "Celia Chen," aka "Cecilia Chen," aka "Chunping Ji," knowingly aided, abetted, counseled, commanded, induced, and procured another person to transport, transmit, and transfer a monetary instrument and funds to a place in the United States from or through a place outside the United States with the intent to promote the carrying on of specified unlawful activity, specifically, smuggling and export control violations involving items controlled under the regulations under the Export Administration Regulations (15 C.F.R. Parts 730-774), and an offense under section 206 (relating to penalties) of the International Emergency Economic Powers Act.

COUNT EIGHT

[18 U.S.C. § 1543]

In or about September 2014, in Los Angeles County, within the Central District of California, and elsewhere, defendant SI CHEN, aka "Cathy Chen," aka "Celia Chen," aka "Cecilia Chen," aka "Chunping Ji," willfully and knowingly used a false, forged, counterfeited, and altered passport or instrument purporting to be a passport. Specifically, defendant CHEN used a counterfeited PRC passport or instrument purporting to be a PRC passport, in the alias Chunping Ji, to rent an office in Pomona, California, in ASSI's name.

COUNT NINE

[13 U.S.C. § 305(a)(1); 15 C.F.R. §§ 30.2(e), 30.71(a), 758.1]

On or about October 21, 2014, in Los Angeles County, within the Central District of California, and elsewhere, defendant SI CHEN, also known as ("aka") "Cathy Chen," aka "Celia Chen," aka "Cecilia Chen," aka "Chunping Ji" ("defendant CHEN") knowingly and willfully failed to file export information required to be filed through the Automated Export System.  Specifically, for an export from the United States of Microwave Components, the value of which exceeded $2,500, defendant CHEN failed to file, and caused the shipper to fail to file, export information required to be filed through the AES by falsely representing on shipping documents that the value of the Microwave Components was less than $2,500, when, in fact, defendant CHEN knew that the value of the Microwave Components exceeded $2,500.

COUNT TEN

[13 U.S.C. § 305(a)(1); 15 C.F.R. §§ 30.2(e), 30.71(a), 758.1]

On or about November 6, 2014, in Los Angeles County, within the Central District of California, and elsewhere, defendant SI CHEN, also known as ("aka") "Cathy Chen," aka "Celia Chen," aka "Cecilia Chen," aka "Chunping Ji" ("defendant CHEN") knowingly and willfully failed to file export information required to be filed through the Automated Export System. Specifically, for an export from the United States of Microwave Components, the value of which exceeded $2,500, defendant CHEN failed to file, and caused the shipper to fail to file, export information required to be filed through the AES by falsely representing on shipping documents that the value of the Microwave Components was less than $2,500, when, in fact, defendant CHEN knew that the value of the Microwave Components exceeded $2,500.

COUNT ELEVEN

[13 U.S.C. § 305(a)(1); 15 C.F.R. §§ 30.2(e), 30.71(a), 758.1]

On or about December 11, 2014, in Los Angeles County, within the Central District of California, and elsewhere, defendant SI CHEN, also known as ("aka") "Cathy Chen," aka "Celia Chen," aka "Cecilia Chen," aka "Chunping Ji" ("defendant CHEN") knowingly and willfully failed to file export information required to be filed through the Automated Export System.  Specifically, for an export from the United States of a Traveling Wave Tube Amplifier, the value of which exceeded $2,500, defendant CHEN failed to file, and caused the shipper to fail to file, export information required to be filed through the AES by falsely representing on shipping documents that the value of the TWT Amplifier was less than $2,500, when, in fact, defendant CHEN knew that the value of the TWT Amplifier exceeded $2,500.

1

COUNT TWELVE

2   [13 U.S.C. § 305(a)(1); 15 C.F.R. §§ 30.2(e), 30.71(a), 758.1]

3      On or about August 27, 2015, in Los Angeles County, within the

4   Central District of California, and elsewhere, defendant SI CHEN,

5   also known as ("aka") "Cathy Chen," aka "Celia Chen," aka "Cecilia

6   Chen," aka "Chunping Ji" ("defendant CHEN") knowingly and willfully

7   failed to file export information required to be filed through the

8   Automated Export System.  Specifically, for an export from the United

9   States of Low Noise Amplifiers, the value of which exceeded $2,500,

10  defendant CHEN failed to file, and caused the shipper to fail to

11  file, export information required to be filed through the AES by

12  falsely representing on shipping documents that the value of the LNAs

13  was less than $2,500, when, in fact, defendant CHEN knew that the

14  value of the LNAs exceeded $2,500.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNT THIRTEEN

[13 U.S.C. § 305(a)(1); 15 C.F.R. §§ 30.2(e), 30.71(a), 758.1]

On or about November 24, 2015, in Los Angeles County, within the Central District of California, and elsewhere, defendant SI CHEN, also known as ("aka") "Cathy Chen," aka "Celia Chen," aka "Cecilia Chen," aka "Chunping Ji" ("defendant CHEN") knowingly and willfully failed to file export information required to be filed through the Automated Export System. Specifically, for an export from the United States of Digital-to-Analog Converters, the value of which exceeded $2,500, defendant CHEN failed to file, and caused the shipper to fail to file, export information required to be filed through the AES by falsely representing on shipping documents that the value of the DACs was less than $2,500, when, in fact, defendant CHEN knew that the value of the DACs exceeded $2,500.

COUNT FOURTEEN

[18 U.S.C. §§ 1546(a); 2(b)]

On or about June 20, 2015, in Los Angeles County, within the Central District of California, and elsewhere, defendant SI CHEN, also known as ("aka") "Cathy Chen," aka "Celia Chen," aka "Cecilia Chen," aka "Chunping Ji," ("defendant CHEN"), knowingly made under oath, and as permitted under penalty of perjury under Section 1746 of Title 28, United State Code, knowingly subscribed as true, a false statement with respect to a material fact in an application, affidavit, and other document required by the immigration laws and regulations prescribed thereunder, and knowingly presented such application, affidavit, and other document which contained such false statement and which failed to contain any reasonable basis in law or fact. Specifically, on or about June 20, 2015, defendant CHEN knowingly signed, under penalty of perjury, and caused to be submitted to United States Citizenship and Immigration Services ("USCIS"), a Form I-485, Application to Register Permanent Residence or Adjust Status, on which she knowingly made false statements with respect to material facts.

On that Form I-485, CHEN answered "no" to the question "Have you received public assistance in the United States from any source, including the U.S. Government or any State, county, city, or municipality (other than emergency medical treatment), or are you likely to receive public assistance in the future?" In truth and in fact, as defendant CHEN then well knew, her answer "no" was false, because she had received public assistance in the United States, other than emergency medical treatment, from the Women, Infants and Children ("WIC") Program.

27

1    On that Form I-485, CHEN answered "no" to the question "Do you
2  intend to engage in the United States in: Any activity to violate or
3  evade any law prohibiting the export from the United States of goods,
4  technology, or sensitive information?"  In truth and in fact, as
5  defendant CHEN then well knew, her answer "no" was false, because she
6  had engaged and intended to engage in activity violating and evading
7  laws prohibiting the export from the United States of goods,
8  technology, and sensitive information.

9    On that Form I-485, CHEN answered "no" to the question "[H]ave
10  you, by fraud or willful misrepresentation of a material fact, ever
11  sought to procure . . . a visa, other documentation, entry into the
12  United States, or any immigration benefit?"  In truth and in fact, as
13  defendant CHEN then well knew, her answer "no" was false, because she
14  had, in conjunction with her Form I-485, signed and submitted to
15  USCIS a Form G-325A, Biographical Information, on which she
16  fraudulently and willfully misrepresented material facts,
17  specifically, that she had never used any name other than "Si Chen,"
18  and that she was not employed from July 2013 to the "present time"
19  (June 20, 2015, the date on which defendant CHEN signed the Form G-
20  325A).  In truth and in fact, as defendant CHEN then well knew, she
21  //
22  //
23  //
24  //
25  //
26  //
27  //
28  //

1  had used several names other than "Si Chen," including the alias

2  Chunping Ji, and she had been employed during a time within July 2013

3  through June 20, 2015.

4                                    A TRUE BILL

5

6                                          /s/
                               _____

7                               Foreperson

8  SANDRA R. BROWN
   Acting United States Attorney
9

10

11 PATRICK R. FITZGERALD
   Assistant United States Attorney
12 Chief, National Security Division

13 CHRISTOPHER GRIGG
   Assistant United States Attorney
14 Chief, Terrorism and Export
     Crimes Section
15

16 JUDITH A. HEINZ
   Assistant United States Attorney
   Senior Litigation Counsel
17 National Security Division

18

19

20

21

22

23

24

25

26

27

28